```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/14/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

DANIEL LATNER, individually and on behalf of others similarly situated,

                Plaintiff,

-against-

MOUNT SINAI HEALTH SYSTEM, INC., and WEST PARK MEDICAL GROUP, P.C.,

                Defendants.

------------------------------------------------------------- X

**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

16 Civ. 683 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Plaintiff Daniel Latner was a patient of defendant West Park Medical Group (WPMG), a group practice which is affiliated with defendant Mount Sinai Health System, Inc (MSHS). Plaintiff brings a putative class action under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.*, against WPMG and MSHS. He alleges that defendants violated § 227(b)(1)(A)(iii) of the TCPA by making or causing to be made "telemarketing" calls to the cell phones of plaintiff and others using an automatic telephone dialing system ("ATDS") without prior express consent. Pursuant to Fed. R. Civ. P. 12(c), defendants move for judgment on the pleadings. For the reasons stated below, defendants' motion is GRANTED and this case is dismissed.

## I. FACTS

       Plaintiff visited WPMG on October 31, 2003, for a blood test and to assess his overall health and cholesterol levels. Plaintiff provided WPMG with his home phone number on two intake forms – a medical history form and a patient registration form. Def. Ex. 1–2. Plaintiff also signed a *Continuum Health Partners Ambulatory Patient Notification Record*, which states

that the signee has been given notice of, *inter alia*, WPMG's *Continuum Notice of Privacy Practices* (NPP), Def. Ex. 3. The NPP provides that the signee "consent[s] to share [his] health information for payment, treatment and hospital operations purposes" and that WPMG "may use and disclose [the signee's] health information to treat [his or her] condition, collect payment for that treatment, or run our business operations." *Id.*

In June 2011, WPMG retained the services of third-party PromptALERT, Inc. to use its software program, *PatientPrompt*, to transmit flu shot reminder on behalf of WPMG. On November 15, 2011, plaintiff returned to WPMG for an annual visit that was described as a "routine medical examination." Deleon Decl., ¶ 9, Def. Ex. 5. During this 2011 appointment, plaintiff declined immunizations. Def. Ex. 5. In September 2014, PromptALERT, using an ATDS, sent the following text message to active WPMG patients who had been to the office in the three years prior:

> "Its flu season again. Your PCP at WPMG is thinking of you! Please call us at 212-247-8100 to schedule an appointment for a flu shot. ((212)247-8100, WPMG)." First Amended Complaint (FAC), ECF 27 at 4.

## II. ALLEGATIONS

Plaintiff alleges that defendants violated § 227(b)(1)(A)(iii) of the TCPA by using an ATDS to make a call to telephone numbers assigned to a cellular telephone service.

Plaintiff alleges two putative classes. The first class consists of: "All persons who were sent a text message by or on behalf of Mount Sinai Health System, Inc. to their cellular telephone number, on or after four years prior to the filing of this action, using equipment capable of dialing numbers without human intervention, where one purpose of the call was to encourage the recipient to make a new purchase of goods or services." FAC at 10. The second class represents all similarly situated persons messaged by or on behalf of WPMG. Id.

Each class also alleges a "subclass" of calls that were made "on or after October

16, 2013," the effective date of the Federal Communications Commission's (FCC) regulations to the TCPA requiring written express consent for telemarketing calls. *Id.*

Plaintiff asserts that he and other members of the class are each entitled to (1) a minimum of $500 in damages for each violation, and (2) an injunction against future calls. FAC at 9.

## III. THE TELEPHONE CONSUMER PROTECTION ACT

The TCPA, passed in response to "[v]oluminous consumer complaints about abuses of telephone technology" such as "computerized calls dispatched to private homes ... bans certain invasive telemarketing practices." *Mims v. Arrow Fin. Servs., LLC,* 132 S.Ct. 740, 744 (2012). The statute prohibits any person from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service....or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A). Accordingly, the TCPA recognizes "prior express consent" and "emergency purposes" as affirmative defenses to liability. *See King v. Time Warner Cable*, 113 F. Supp. 3d 718, 721–22 (S.D.N.Y. 2015). The TCPA creates a private right of action for affected consumers, and allows them to recover the greater of their actual monetary loss or $500 for each violation. *Id.* § 227(b)(3). It also allows the district court to increase the award up to treble statutory damages if it finds the defendant's violation was willful or knowing. *Id.*

In 2012, and effective October 16, 2013, the FCC created a "Telemarketing Rule" requiring "prior written consent for autodialed or prerecorded *telemarketing* calls." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1838 (2012) (emphasis in original). FCC regulations provide an exemption – a

"Healthcare Exception" – by which healthcare-related calls to residential landlines are exempt from any consent requirement. *See* 47 C.F.R. § 64.1200(a)(3)(v); In re: Telephone Consumer Protection Act of 1991, 77 Fed. Reg. 34233, ¶¶ 40–48 (June 11, 2012) ("FCC Final Rule"). The Healthcare Exception also exempts calls to wireless cell numbers if the "call [] delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPPAA Privacy Rule, 45 CFR 150.103." *See* 47 C.F.R. § 64.1200(a)(2). HIPAA defines healthcare to include "care, services, or supplies related to the health of an individual." *See* 45 C.F.R. § 160.103 (defining "health care"). Furthermore, HIPPA exempts from its definition of marketing all communications that are made "[f]or treatment of an individual by a health care provider . . . or to direct or recommend alternative treatments" to the individual. 45 C.F.R. § 164.501.

## IV. LEGAL STANDARD

In deciding a Rule 12(c) motion, this Court applies the same standard as motion under Rule 12(b)(6) motion to dismiss, accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). To survive a Rule 12(c) motion, plaintiff's complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In deciding whether or not to dismiss a complaint, the court may also consider matters of public record. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

## IV. DISCUSSION

I hold that the message at issue here falls within HIPPA's broad definition of "healthcare" and therefore constitutes a "healthcare message" under the FCC regulations. *See Jackson v. Safeway, Inc.*, No. 15-CV-04419-JSC, 2016 WL 5907917, at *7 (N.D. Cal. Oct. 11,

2016) ("[E]very reasonable trier of fact would find that the flu shot reminder calls fall under the Exigent Healthcare Treatment Exemption and [defendant] thus did not require Plaintiff's prior express consent under the TCPA."). The message is not a "telemarketing" communication because, having declined immunizations during his November 15, 2011 appointment, the flu vaccine reminder was intended to "direct or recommend alternative treatment" and therefore is exempt from HIPPA's definition of "telemarketing." 45 C.F.R. § 164.501. Furthermore, the FCC regulations provide that immunization reminders are healthcare messages, and are therefore exempt from the written consent requirement:

> "In the FTC's TSR [Telemarketing Sales Rule] proceeding, concern was raised, in relevant part, whether immunization reminders . . . would constitute inducements to purchase goods or services . . . [T]he Commission finds the calls at issue here are intended to communicate health care-related information rather than to offer property, goods, or services and conclude that such calls are not unsolicited advertisements. Therefore, such calls would satisfy the TCPA standard for an exemption as provided in the Act and the FCC's implementing rules." *In re: Telephone Consumer Protection Act of 1991*, 77 Fed. Reg. 34233, ¶¶ 46 (June 11, 2012) (emphasis added).

Accordingly, the message at issue falls within the FCC's "Healthcare Exception" and defendants' motion for summary judgment is GRANTED. Plaintiff's class action is therefore moot. The Clerk shall terminate all motions (ECF 50 and 52) and close the case.

    SO ORDERED.

Dated:    New York, New York
           Dec. 14, 2016

_____
ALVIN K. HELLERSTEIN
United States District Judge